SACHER *v.* ASSOCIATION OF THE BAR OF THE
CITY OF NEW YORK ET AL.

No. 307. Argued March 11, 1954.—Decided April 5, 1954.

*Telford Taylor* argued the cause and filed a brief for petitioner.

*Eli Whitney Debevoise* argued the cause and filed a brief for respondents.

PER CURIAM.

This is a proceeding brought by respondent bar associations in the United States District Court for the Southern District of New York for the disbarment of petitioner from practice in that court. Petitioner had previously been convicted of contempt in the same court. See *Sacher* v. *United States,* 343 U. S. 1.

The District Court, after disallowing eight of the specifications in the petition for disbarment, found as to the others that there was no conspiracy as charged therein and no moral turpitude involved, and that the proven contumacious conduct of petitioner stemmed from an excess of zeal for his clients that obscured his recognition of responsibility as an officer of the court. All of the conduct complained of occurred in one protracted trial involving many defendants and counsel. See *Dennis* v. *United States,* 341 U. S. 494. There was no allegation or proof

of prior misconduct in petitioner's twenty-four years of practice. The Court of Appeals divided upon the propriety of permanent disbarment, but unanimously questioned the importance of one of the two specifications principally relied on by the trial court.

At the time the District Court made its decision in this case, the contempt judgment was under review on appeal, and it did not know and could not know that petitioner would be obliged to serve, as he did, a six months' sentence for the same conduct for which it disbarred him.

In view of this entire record and of the findings of the courts below, we are of the opinion that permanent disbarment in this case is unnecessarily severe. The judgment is reversed and the case remanded to the District Court for further consideration and appropriate action not inconsistent with this opinion.

MR. JUSTICE BURTON would affirm the judgment of the Court of Appeals.

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE REED, dissenting.

The conclusion of the Court that the conduct of Mr. Sacher in the trial of *Dennis* v. *United States,* 341 U. S. 494, did not justify the order of disbarment entered against him by the United States District Court for the Southern District of New York seems so inimical to the orderly administration of justice as to justify this expression of dissent. We trust that the purpose of the dissent will not be misinterpreted as an implied criticism of those members of the bar who undertake the task of the representation of unpopular clients. Those who provide such counsel in the spirit of justice and in accordance with the dignity of the courts are to be

commended. They enhance the tradition of American lawyers of seeing that all defendants have proper representation before the courts. The purpose of this dissent is to show that in reversing the disbarment of Mr. Sacher this Court departs from its previous practice of leaving exclusions from their bars to the district courts except when there has been an abuse of discretion.

If no protest against such action were made here, we think the danger of the adoption of tactics akin to those of Mr. Sacher by other lawyers in other cases of intense partisanship or involving deep feeling would be materially enlarged. The contagiousness of unethical practices is shown by the conduct in the *Dennis* case by another member of the bar that resulted in his conviction of contempt, 343 U. S. 1, and in his suspension from membership in the District Court Bar for two years.[1] The New Jersey Supreme Court disbarred this other lawyer from the practice of law in that State on the basis of such contempt conviction. 9 N. J. 269, 316, 87 A. 2d 903, 88 A. 2d 199. That action resulted in his disbarment from our Bar. 345 U. S. 286.

The misconduct charged against Mr. Sacher occurred in a long-drawn-out trial lasting from January 17, 1949, with occasional intermissions until a verdict of guilty, subsequently affirmed here, was reached on October 21, 1949. The charges and findings as to improper conduct do not refer to an isolated instance but to a course of reprehensible conduct throughout the trial. The

---

[1] The trial judge compared the conduct of this lawyer and Mr. Sacher (see note 5, *infra*) thus:

"I feel that [the other lawyer's conduct at the trial] is such as to require firm disciplinary action. However, his attitude as disclosed on the record and on his brief herein leaves room for reasonable expectation that the experience of discipline may have such restraining effect on his courtroom behavior that in the future he may be safely expected to exercise without abuse the privileges of membership in this Bar."

charges were filed by the Association of the Bar of the City of New York and the New York County Lawyers' Association after the verdict in the *Dennis* case. At that time the trial judge in the *Dennis* case had imposed on Mr. Sacher as punishment for his contemptuous conduct a sentence of six months.[2] This was upheld by this Court after the order of disbarment and has been served. The sentence was a punishment for Mr. Sacher's contempt of court. Disbarment is not punishment for contempt but a cleansing of the bar by ousting.[3] Punishment for contempt should not be considered as a prohibition of or in mitigation of discipline in disbarment proceedings. In fact, a prior conviction adds force to the need to disbar. The Court's *per curiam* opinion in this case seems to incline to the contrary view. Apparently it looks upon the affirmance of the contempt conviction as something that must soften the attitude toward disbarment.

Coming to the merits of this disbarment, we limited consideration on certiorari to the following question:

> "Accepting the facts as found in the memorandum decision of Chief Judge Hincks, does permanent disbarment exceed the bounds of fair discretion, particularly in view of the punishment of petitioner's

[2] The sentence was later affirmed in the Court of Appeals, 182 F. 2d 416, and we denied certiorari, 341 U. S. 952. Later certiorari was granted, 342 U. S. 858. Disbarment followed. Thereafter we affirmed the sentence of contempt, 343 U. S. 1. The disbarment was subsequently affirmed, 206 F. 2d 358.

[3] *Ex parte Wall*, 107 U. S. 265, 273:
" 'The question is,' said Lord Mansfield, 'whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion. . . . It is not by way of punishment; but the court in such cases exercise their discretion, whether a man whom they have formerly admitted is a proper person to be continued on the roll or not.' " See *In re Isserman*, 345 U. S. 286, 289.

individual misconduct as a contempt and the finding
that the proof does not establish that he so behaved
pursuant to a conspiracy or a deliberate and concerted
effort?" [4]

That limitation accepted the following findings made by
Chief Judge Hincks as a valid and unassailable foundation
for decision:

"As to Mr. Sacher, I find as charged in Par. 14,

"(1) that with intent to delay and obstruct the
trial, he disregarded numerous warnings of the court
concerning wilful, delaying tactics and persisted
in making long and repetitious arguments and
protests, . . . and made needless reiterations of
objections of others, . . . .

"(2) that for the purpose of bringing the court
into general discredit and disrepute, (a) he insinu-
ated that various findings made by the court were
made for purposes of newspaper headlines, . . . (b)
he accused the court of prejudice and partiality, . . .
and (c) made disrespectful, insolent and sarcastic
comments and remarks to the court, many of which
were with intent to provoke the court into intem-
perate action which might be availed of as ground
for mistrial or later as error on appeal, . . . .

"Mr. Sacher's proved misconduct, as charged in this
paragraph . . . in my judgment requires disbar-
ment."

[Record references omitted.]

"3. By Paragraph 16 it is also charged that Mr.
Sacher 'made insolent, sarcastic, impertinent and
disrespectful remarks to the Court and conducted'
himself 'in a provocative manner.' This charge also
I find abundantly proved by the cited references to
the record."

---

[4] 346 U. S. 894.

It would take voluminous quotations from the huge record to document Chief Judge Hincks' conclusions. Our order on certiorari accepts their truth. The trial court commented:

> "That such conduct was unprofessional needs no exegesis: I so hold. Even more closely than that dealt with in the preceding Section it touches the vitals of the judicial process: even greater is its tendency to obstruct the attainment of personal justice. And the proven volume of this misconduct also was such as to constitute a serious obstruction to the proper conduct of the trial. Overpersistence in argument, as observed above, tends to breed confusion. Provocative conduct tends to breed turbulence. Insolent and disrespectful remarks to the Court tend to undermine the judicial authority indispensable to the power effectively to cope with such intrusions which by their very nature obstruct the development of the real merits of the case.
>
> "For proved misconduct falling within this branch of the charge, I conclude that an order of disbarment is required."

The Court, as it must by its grant of certiorari, bases its action on the facts of disrespect to the trial court, wilful delay, and a purpose to discredit the administration of justice. It differs from the trial court only as to the measure of discipline required.[5] By reversing the judgment below, without discussion of the accepted rule in

---

[5] The Court refers to the language of the order, "permanently disbarred." This, of course, should be read as a disbarment subject to reinstatement. See Drinker, Legal Ethics, 49, and the cases collected in 7 C. J. S. 814; 5 Am. Jur. 443; 6 Fed. Dig. 355; 48 A. L. R. 1236. Reinstatement may follow "a sincere and timely change of attitude." Such an attitude on the part of Mr. Sacher, Chief Judge Hincks says in his decision, did not exist even at the time of the hearing of the charges.

federal courts that the exercise of judicial discretion in disbarment will not be overturned on review unless there is a clear abuse of discretion,[6] this Court now summarily places itself in the position of a trial court. It acts, not upon an abuse of discretion by the trial court, but upon a record to determine for itself the proper extent of punishment. Certainly this Court does not mean to rule that conduct such as the accepted facts disclose does not support the discretion of the trial judge in disbarring Mr. Sacher.[7]

---

[6] The rule as to review of disbarment of *Ex parte Burr,* 9 Wheat. 529, announced by Chief Justice Marshall, has been the guide for United States Courts:

"There is, then, no irregularity in the mode of proceeding which would justify the interposition of this Court. It could only interpose, on the ground that the Circuit Court had clearly exceeded its powers, or had decided erroneously on the testimony. The power is one which ought to be exercised with great caution, but which is, we think, incidental to all Courts, and is necessary for the preservation of decorum, and for the respectability of the profession. Upon the testimony, this Court would not be willing to interpose where any doubt existed." *Id.,* at 531. *Ex parte Secombe,* 19 How. 9; *Ex parte Bradley,* 7 Wall. 364. These early cases were under mandamus practice. We now proceed by appeal and certiorari. See *Thatcher* v. *United States,* 212 F. 801, 804. The principles of the *Burr* case still govern and the weight accorded the conclusion of the trial court remains unchanged. *In re Sacher,* 206 F. 2d 358, 361; *In re Chopak,* 160 F. 2d 886, 887; *In re Schachne,* 87 F. 2d 887, 888; *In re Spicer,* 126 F. 2d 288, 289, 292; *In re Patterson,* 176 F. 2d 966, n. 1.

[7] *Burns* v. *United States,* 287 U. S. 216, 222–223:

"The question is simply whether there has been an abuse of discretion, and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action. . . . It takes account of the law and the particular circumstances of the case and 'is directed by the reason and conscience of the judge to a just result.' . . . While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice." See *United States* v. *McWilliams,* 82 U. S. App. D. C. 259, 261, 163 F. 2d 695, 697, and cases cited.

Such a change of the course of decision is a disservice to the orderly progress of trials. It stimulates rather than deters the adoption of the strategy of the *Dennis* case. It intrudes unnecessarily this Court's views of the proprieties into the discipline of bars of regions and communities whose attitude toward courtroom behavior diverges from our own. It is enough if we stand ready to say that an abuse of discretion by a trial court will not be allowed to stand. We should not substitute our discretion for that of the trial judge. Calm and reasoned presentation of facts and law are not only more effective but are essential if administration of justice by the courts is not to be disrupted by such courtroom tactics as were used in the *Dennis* trial. We demand tolerance for those who differ. Conformity is not expected or desired. There is room for every shade of opinion and expression short of incitement to crime. But there is not room for violence, offensive expletives or interference with orderly procedure in a courtroom, and such an attitude is not to exalt order over liberty but to exalt reason over force. An atmosphere filled with unproven personal charges or innuendoes of wrongful action is not conducive to dispassionate appraisal of the truth of matters under judicial investigation. I would uphold the discipline administered by the bar and trial judge by affirming this judgment.