ROGERS, Circuit Judge,
concurring in part and concurring in the judgment:
I join the court in holding that we have jurisdiction over Aka’s challenges to the Tax Court’s decision disbarring him from practice. Op. 31-33. Defining our standard of review turns out to be not as straightforward, however. See Op. 32-33; Concurring Op. 38 (Griffith, J.).
Congress has directed this court to review decisions of the Tax Court “in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury[.j” 26 U.S.C. § 7482(a)(1); see Op. 31-32. A district court’s ruling on a question of law is reviewed de novo, while its factual findings are reviewed for clear error, that is “even when there is record evidence to support it, ... ‘the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.’ ” FTC v. Boehringer Ingelheim Pharmaceuticals, Inc., 778 F.3d 142, 148 (D.C. Cir. 2015).
Upon review of discipline imposed under decisions of the district court upon members of its Bar, this court has tended to embrace a fulsome scope of review without always defining it in the same terms. See, e.g., Halpem v. Comm. on Admissions & Grievances, 139 F.2d 361, 361 (D.C. Cir. 1943); Fletcher v. Laws, 64 F.2d 163, 165 (D.C. Cir. 1933); Castigan v. Adkins, 18 F.2d 803, 804-05 (D.C. Cir. 1927); In re Adriaans, 28 App.D.C. 515, 524-25 (1907). But see also Tulman v. Comm. on Admissions & Grievances, 135 F.2d 268, 268 (D.C. Cir. 1943). For instance, in Halpem, the court explained that it had “read with care the evidence taken on the hearing” by the three-judge district court panel imposing the discipline and concluded that “the charge of professional misconduct was established by convincing proof, and ... that the character of the misconduct fully justified the censure and the order of suspension.” 139 F.2d at 361. This case reflects both deference to the district court’s discretionary choice of discipline and implies an understanding that the ultimate evaluation of the appropriateness of the selected discipline is for this court to decide. By contrast, in Tulman, where the appellant claimed his discipline was too severe, the court stated that the district court’s exercise of discretion in rejecting appellant’s “explanation in palliation” “is not subject to review.” 135 F.2d at 268. Nonetheless, the court added that appellant had never denied the truth of the charges against him. Id. Presumably, then, this could have made a difference to the outcome on appeal. But the court further opined that if it had jurisdiction it would “approve” of the discipline, explaining that “[w]e are unable to escape the conclusion that appellant’s *36 sworn answer to the [Grievance Committee of the District Court’s] complaint, as well as his own testimony in the [disciplinary] trial, fully justified the order of disbarment.” Id. The analysis is consistent with the approach in Halpem to the extent it too implies a different result had this court concluded the selected discipline was unreasonably harsh.
In other cases, the court’s articulation varies. In re Williams, 256 F.2d 888, 888 (D.C. Cir. 1958), “found no error” in the disbarment of an attorney convicted of forgery. Levine v. Comm. on Admissions & Grievances, 328 F.2d 519, 520 (D.C. Cir. 1964), found “[t]he evidence as a whole is convincing that the conduct charged and found did indeed occur,” and explained, in rejecting the attorney’s view the discipline was “too harsh,” that the court was “constrained to leave undisturbed the conclusion reached by the District Court as to the action it felt called upon to take,” while observing, “[w]e would not be justified, in view of the conduct of appellant, in superimposing a different judgment of our own as to the remedy.” In re Quimby, 359 F.2d 257, 258 (D.C. Cir. 1966), was even more direct: because the facts admitted by appellant were sufficient to constitute the crime of embezzlement, “disbarment should ordinarily follow as a matter of course.” A year later the court appeared even more deferential, stating in Sullivan v. Comm. on Admissions & Grievances, 395 F.2d 954, 956 (D.C. Cir. 1967), supp. op. on reh’g (D.C. Cir. 1968), that the conduct of which the attorney was found guilty — namely, violating rules against solicitation and conflicts of interest — “reflected unfavorably on his professional conduct,” and the record “abundantly supports the view of the District Court panel of judges” that he should be admonished.
Perhaps most instructive of this court’s understanding of its responsibility in reviewing attorney disciplinary decisions is the court’s statement in Castigan:
Upon a consideration of the record we agree with the lower court that the defendant’s conduct was unprofessional, and fell within the denunciation of the statute. But we believe that the ends of justice and of public policy may be adequately met by imposing a sentence of suspension, instead of absolute disbarment upon him. We are convinced that he did not enter into this transaction with intent to cheat or defraud his clients, nor did he at any time entertain such a purpose.
18 F.2d at 804. This reflects the “clear error” standard for review of district court factual findings, see, e.g., Boehringer Ingelheim Pharmaceuticals, 778 F.3d at 148, and more, namely an independent assessment, as a matter of law, whether the selected discipline is consistent with basic notions of fairness. Although Castigan involved review of a D.C. court decision, not a decision of a federal court, at that time this court was the appellate court for attorney disciplinary matters. See Swain v. Pressley, 430 U.S. 372, 375 n.4, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977); Pernell v. Southall Realty, 416 U.S. 363, 367, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974).
The differing articulations of the standard and scope of review of attorney discipline are not unique to this court. Our sister circuits appear to apply an abuse of discretion standard of review, see, e.g., In re Zeno, 504 F.3d 64, 66 (1st Cir. 2007); In re Sealed Appellant, 194 F.3d 666, 670 (5th Cir. 1999), sometimes describing it as a “highly deferential abuse-of-discretion standard,” In re Gouiran, 58 F.3d 54, 58 (2d Cir. 1995), giving “substantial deference to the district court in disciplinary matters,” In re Evans, 801 F.2d 703, 706 (4th Cir. 1986). One circuit announced plainly that it “must determine for itself *37 whether the attorneys’ conduct was so grievous as to require suspension.” In re Finkelstein, 901 F.2d 1560, 1564 (11th Cir. 1990). All this suggested to one observer that the courts are applying a two-tiered approach under which the initial decision to sanction an attorney is reviewed under a traditional abuse of discretion standard, while “a different, and perhaps more stringent, standard of review” is applied to the choice of sanction — “whether the sanction imposed was ‘just.’ ” Judith A. McMorrow et al., Judicial Attitudes Toward Confronting Attorney Misconduct: A View from the Reported Decisions, 32 Hofstra L. Rev. 1425, 1449 (2004) (citing Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1586, 1543 (11th Cir. 1993)). In this vein, the Second Circuit has suggested more recently that a “more exacting” standard is warranted in attorney discipline cases “when the district court is accuser, fact finder and sentencing judge all in one.” In re Peters, 642 F.3d 381, 384 (2d Cir. 2011) (quoting Woltefs Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 113 (2d Cir. 2009)).
Notwithstanding different articulations, this circuit and the other circuits appear to apply an abuse of discretion standard of review that entails the traditional review of fact finding for clear error and de novo review for questions of law. See generally Kickapoo Tribe v. Babbitt, 43 F.3d 1491, 1497 (D.C. Cir. 1995) (citing Hunt v. Nat’l Broad. Co., Inc., 872 F.2d 289, 292 (9th Cir. 1989)). What differs in matters of attorney discipline, however, is that appellate review, although deferential to the deciding court’s choice, encompasses an ultimate determination of the appropriateness of the chosen discipline. In Costigan, this court invoked the concept of “the ends of justice and of public policy.” 18 F.2d at 804. Or, as other circuits have suggested, appellate review must ensure the chosen discipline conforms to “fundamental notions of fairness.” In re Jacobs, 44 F.3d 84, 88 (2d Cir. 1994). Even in Tulman, this court apparently concluded that it was appropriate to indicate that it, too, was satisfied that the chosen discipline was not too harsh. 135 F.2d at 268. To this extent, there is a two-tiered abuse of discretion standard of review of attorney disciplinary cases.
In sum, this court’s published opinions reflect a fulsome scope of review of the factual record and the disciplinary procedures afforded to the attorney. Although acknowledging that due deference is to be accorded to the discretionary choice of discipline by the imposing court, see Ex parte Burr, 22 U.S. (9 Wheat.) 529, 530, 6 L.Ed. 152 (1824), this court all the while renders an ultimate assessment of what is appropriate in view of the facts found and the process afforded during the disciplinary proceeding, see, e.g., In re Snyder, 472 U.S. 634, 647, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985); Sacher v. Ass’n of the Bar of City of New York, 347 U.S. 388, 389, 74 S.Ct. 569, 98 L.Ed. 790 (1954); see also In re Jacobs, 44 F.3d at 88 (interpreting Burr). Succinctly put, this is an abuse of discretion standard of review, which encompasses examination of “whether the reasons given reasonably support the conclusion.” Kickapoo Tribe, 43 F.3d at 1497 (quoting Johnson v. United States, 398 A.2d 354, 365 (D.C. 1979)).
Today, the court, much as in our unpublished opinions declining to choose between abuse of discretion and de novo review, purports to avoid making the choice again, going only so far as to adopt a clearly erroneous standard of review for factual findings and a de novo standard of review of constitutional Due Process challenges. Op. 32-33. But our precedent indicates this court will decide for itself the appropriateness of a sanction in cases that present serious concern about the extent of discipline imposed. Whatever discomfort there *38 might be to extending an abuse of discretion review to the disciplinary actions of an Article I court, see Freytag v. Comm’r of Internal Revenue, 501 U.S. 868, 891, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991), this court is bound by Section 7482(a)(1) and our interpretation of it. See LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996).
Upon applying an abuse of discretion standard of review, I am satisfied, for reasons stated by the court, see Op. 33-34; see also Concurring Op. 38-39 (Griffith, J.), that Aka’s challenges present no basis to conclude that the Tax Court abused its discretion in barring him from continuing to practice as a member of its Bar. That Court’s findings show that Aka’s conduct warrants a sanction. The Tax Court’s previous discipline of appellant provided fair warning of what is required of members of its Bar. In connection with his later failures to conform his conduct to its requirements, the Tax Court afforded Aka a full opportunity to present his defense and explanation. His explanations to the Tax Court and this court, and this court’s review of the record, provide no reason to conclude under the circumstances that the Tax Court’s choice was, as Aka maintains, too harsh.